REED v TOP NOTCH FENCE INSTALLERS

Docket No. 49839. Submitted March 11, 1981, at Lansing.—Decided May 6, 1981. Leave to appeal applied for.

Steven L. Reed was permanently and totally disabled as a result of an injury arising out of his employment with Top Notch Fence Installers. Top Notch and the Second Injury Fund petitioned the Bureau of Workmen's Compensation for an order authorizing their control over Reed's medical care. Reed, at the same time, petitioned for an increase in the amount of weekly disability benefits paid to him by Top Notch and Second Injury Fund. The administrative law judge denied the increase in benefits and ordered that Top Notch and Second Injury Fund would continue to have control over selection of the facilities which would provide care for Reed. The Workers' Compensation Appeal Board affirmed the decision. Reed appeals. *Held:*

1. The findings of the administrative law judge and the Appeal Board are supported on the record and there is no allegation of fraud. Reed's contention that the Board erred by holding that he was not entitled to increased benefits is without merit.

2. The Worker's Disability Compensation Act does not authorize the Appeal Board to take the choice of care from a claimant and place it in the discretion of the employer or Second Injury Fund. The statute allows the employer to challenge individual doctors chosen by the claimant but it does not place the initial decision with the employer. The Appeal Board exceeded its statutory authority in granting Top Notch and Second Injury Fund control over selection of treatment facilities for Reed.

Affirmed in part and reversed in part.

REFERENCES FOR POINTS IN HEADNOTES

[1] 81 Am Jur 2d, Workmen's Compensation §§ 27, 28.
[2] 82 Am Jur 2d, Workmen's Compensation §§ 630, 631, 633, 634.
[3] 82 Am Jur 2d, Workmen's Compensation §§ 358, 380.
  Changes in cost of living or in purchasing power of money as affecting damages for personal injuries or death. 12 ALR2d 611.
[4, 5] 82 Am Jur 2d, Workmen's Compensation §§ 391, 392.

1. WORKERS' COMPENSATION — JUDICIAL CONSTRUCTION — STATUTES.

The Worker's Disability Compensation Act is to be liberally construed and where the statute can be applied to either grant or deny benefits the issue should be resolved in favor of the claimant (MCL 418.101 *et seq.;* MSA 17.237[101] *et seq.).*

2. WORKERS' COMPENSATION — APPEAL — FINDINGS OF FACT — STATUTES.

Appellate courts are required to review findings of fact of the Workers' Compensation Appeal Board for fraud and to determine whether there is any competent evidence in the record to support the findings of fact by the board (MCL 418.861; MSA 17.237[861]).

3. WORKERS' COMPENSATION — MINIMUM BENEFITS — INCREASES IN BENEFITS — STATUTES.

The Worker's Disability Compensation Act requires an annual increase in minimum benefits paid to a claimant whenever an increase is necessary to offset the effect of inflation (MCL 418.521[2]; MSA 17.237[521][2]).

4. WORKERS' COMPENSATION — CHOICE OF CARE — APPEAL BOARD.

The Workers' Compensation Appeal Board does not have the authority to take the choice of care from a claimant and place it in the discretion of an employer paying benefits or the Second Injury Fund.

5. WORKERS' COMPENSATION — CHOICE OF CARE — EMPLOYER'S RIGHT TO CHALLENGE INDIVIDUAL DOCTORS — STATUTES.

The Worker's Disability Compensation Act allows an employer to challenge individual doctors chosen by a claimant to provide medical care to the claimant (MCL 418.315; MSA 17.237[315]).

*Kelman, Loria, Downing, Schneider & Simpson* (by *Rodger G. Will* and *Rosemary E. Jabbour),* for plaintiff.

*Munroe & Nobach, P.C.* (by *Richard R. Weiser),* for defendants Top Notch Fence Installers and Hastings Mutual Insurance Company.

*Frank J. Kelley,* Attorney General, *Robert A. Derengoski,* Solicitor General, and *Richard F. Za-*

*pala,* Assistant Attorney General, for defendant Second Injury Fund.

Before: BEASLEY, P.J., and BASHARA and MAC-KENZIE, JJ.

PER CURIAM. Plaintiff appeals a decision of the Workers' Compensation Appeal Board granting defendants control over his medical and convalescent care and denying his petition for an increase in compensation benefits.

Plaintiff is totally and permanently disabled as a result of an injury arising out of his employment at defendant Top Notch Fence Installers. Plaintiff worked as a laborer installing fences for Top Notch at the time of the accident. Benefits are being paid by the former employer. Supplemental benefits are paid by defendant Second Injury Fund.

In 1974, defendants petitioned the Bureau of Workmen's Compensation for an order authorizing their control over plaintiff's medical care. Plaintiff sought an increase in weekly benefits. The administrative law judge concluded:

"It is found that defendants have provided reasonable care in established nursing homes. It is further found that types of facilities sought by plaintiff have produced negative results. It is therefore ordered that defendant shall continue to provide reasonable and adequate convalescent nursing care and the selection of facilities shall be under the control of the defendants.

"Plaintiff petitions for an adjustment of plaintiff's rate of payments under the provisions of Chapter 3, 359 of the Act. It is found that Plaintiff, by work history, experience and education, or lack thereof, does not come within the intent and meaning of 359. Plaintiff's petition is, therefore, denied."

The Workers' Compensation Appeal Board affirmed the decision, with one member dissenting.

Initially, plaintiff asserts the Board erred in holding that he was not entitled to increased benefits. Plaintiff relies upon MCL 418.359; MSA 17.237(359), which states:

"Whenever an employee who has not attained his twenty-fifth birthday is injured so that he is entitled to compensation as permanently and totally disabled as defined in this act, if it is established that the injured employee was of such age and experience when injured that, under natural conditions, his wages or position would be expected to increase, that fact, subject to the statutory minimum and maximum weekly payments, may be considered by a hearing referee in determining his weekly payments."

In affirming the administrative law judge's denial of an increase, the Board made the following findings of fact:

"Plaintiff did not complete the 10th grade in regular schooling (he did receive a GED certificate post-injury); his military service included training in parachuting and weaponry, and when he was sent to cook school he had to take 6th grade mathematics and reading concurrently, admitting 'I can't read that good;' [sic] he was injured in Viet Nam and left with a limp; upon returning to Michigan after service discharge he did lawn work at a trailer court; immediately before going to work for defendant he labored at $1 per hour doing yard work for an aunt.

"His employer had described him as a good employee, but not one of the best. He went on to say that even the 'best' that he hired would get a little money in their pockets and disappear for a week at a time. Obviously, the best in that field (itself the best job plaintiff testifies to having had) are marginal laborers. Notwithstanding his stated (and unrealistic) goals of becoming a soybean farmer on 800 acres in Indiana, or patenting synthetic

food, or buying out his former employer, we agree with the referee that plaintiff's prospects at age 24 did 'not come within the intent and meaning of 359.' "

The Board concluded that the plaintiff "would probably have remained on society's fringes performing common labor near the minimum level being earned at the time of the injury had he not been disabled".

One member of the Board dissented due to the employer's testimony that plaintiff could have earned nearly twice his last wage had he been a good fence installer. The employer testified that plaintiff had been only recently hired when he was hurt but that he was a good employee. The dissenter concluded that plaintiff's work history showed signs of improvement, thereby rendering denial of the increase under the statute improper.

Plaintiff admits that the statute is permissive, not mandatory. However, he asserts that since the Worker's Disability Compensation Act of 1969, MCL 418.101 *et seq.;* MSA 17.237(101) *et seq.,* is remedial, it should be liberally construed. Consequently, the Board erred in not finding in his favor on such a close issue.

We disagree with plaintiff's interpretation of the standard of review. Although the act is to be liberally construed, *Deziel v Difco Laboratories, Inc (After Remand),* 403 Mich 1, 33-35; 268 NW2d 1 (1978), this rule pertains to legal interpretation of the statute. Where the statute can be applied to either grant or deny benefits, the issue should be resolved in favor of the claimant.

This is an entirely different standard than that employed in reviewing findings of fact of the Board. Appellate courts are required to review findings of fact for fraud and to determine whether

there is any competent evidence in the record to support the findings of fact made by the Board. MCL 418.861; MSA 17.237(861), *Aquilina v General Motors Corp,* 403 Mich 206; 267 NW2d 923 (1978).

We believe that whether plaintiff's experience and age when injured indicate that his wages would have increased had he not been injured is a fact question. There is no allegation of fraud. The findings of the administrative law judge and the Board are supported on the record. This issue is without merit.

Plaintiff claims that he is entitled to increases in compensation each year pursuant to MCL 418.521(2); MSA 17.237(521)(2), which requires an annual increase in minimum benefits due to inflation.

The Board ordered payment of benefits as follows:

"Upon issuance of the Board's accompanying Order in this case, defendant's and Second Injury Fund's obligation shall be to pay basic and incremental benefits pursuant to our factfindings, application of minimum rates *(Jolliff v American Advertising Co,* 49 Mich App 1), application of the two-thirds average weekly wage maximum *(Kunde v Teesdale Lumber Co,* 55 Mich App 546; and *Wemmer v National Broach and Machine,* 89 Mich App 312 (1979), until such maximum is reached or surpassed by the annually-increasing minimums *(Wemmer, supra).* The employer/carrier's basic rate of compensation for the 1972 injury, pursuant to our findings, is $64, with Second Injury Fund increments flowing from the above findings of fact and applications of law."

According to plaintiff, he is still receiving only $64 per week, as originally established. The Second Injury Fund disputes that fact, claiming that Top Notch is currently paying plaintiff $64 per

week and the Fund is paying him a differential of $70 per week. This differential is based upon the difference between the minimum benefit payable in 1980 ($134) and the amount being paid by Top Notch ($64). At oral argument, defendant Second Injury Fund's counsel presented the panel with a payment schedule verifying that fact.

On the record before us, we cannot determine whether plaintiff is, in fact, receiving the differential payment. Plaintiff failed to argue this point below. A reading of the Board's order indicates it is in conformity with the law. If plaintiff is not receiving the differential payment, he may petition the Bureau for enforcement of the order.

Plaintiff challenges the order giving defendants control over his medical and convalescent care. The Board affirmed the administrative law judge's opinion as follows:

"Plaintiff has been difficult to deal with since his injury, has left convalescent facilities and been removed from others, with additional costs generated for emergency treatment thereafter.

* * *

"Initially, we agree with the propriety of the referee's unusual order directing that medical care be under the control of defendants. Upon review of plaintiff's occasionally bizarre testimony and the deposition of Joseph Schaeffer, M.D., it is clear that plaintiff himself is not capable of evaluating what attendance might be in his best interests. We have been advised at oral argument that no current dispute exists over care being provided, and this affirmance should not be construed as precluding plaintiff from petitioning for medical care or attendance in the future which he believes more appropriate than what is being provided. The burden shall be on him, however, to justify same in the face of our affirmance of the referee's decision."

The dissenting member disagreed on the grounds the act does not allow the remedy awarded. In addition, he voted that the issue was moot since plaintiff had found a place of convalescence in which he could act rationally. He also felt that plaintiff's previously "bizarre" behavior was a normal response of a young person suddenly turned invalid.

The majority relied on MCL 418.315; MSA 17.237(315), which in pertinent part states:

"The employer shall furnish, or cause to be furnished, to an employee who receives a personal injury arising out of and in the course of his employment, reasonable medical, surgical, and hospital services and medicines, or other attendance or treatment recognized by the laws of this state as legal, when they are needed. After 10 days from the inception of medical care as herein provided, the employee may treat with a physician of his own choice by giving to the employer the name of the physician and his intention to treat with the physician. The employer or his carrier may file a petition objecting to the named physician selected by the employee and setting forth reasons for the objection. If the employer or carrier can show cause why the employee should not continue treatment with the named physician of the employee's choice, after notice to all parties and a prompt hearing by a hearing referee, he may order that the employee discontinue treatment with the named physician or pay for the treatment received from the physician from the date the order is mailed * * *."

We agree with the dissent in its conclusion that the statute does not authorize the Board to take the choice of care from the claimant and place it in the discretion of the employer or Second Injury Fund. The statute allows the employer to challenge individual doctors. Assuming without holding that the provision inherently provides the

employer with the right to challenge other types of medical care, *e.g.,* convalescent services, it does not place the initial decision with the employer. We hold that the Board exceeded its statutory authority in granting this admittedly unusual power to defendants.

The remaining allegation of error is without merit and was not properly raised below.

Affirmed in part; reversed in part.