BLACKWELL v CITIZENS INSURANCE COMPANY OF AMERICA

Docket No. 106624. Argued March 4, 1998 (Calendar No. 9). Decided
June 16, 1998.

Cynthia and Donald Blackwell brought an action in the Wayne Circuit
Court against Citizens Insurance Company of America, Cynthia's
employer's worker's compensation insurer, and others, alleging neg-
ligence in the treatment of Cynthia's work-related injuries. The
insurer's initial referral resulted in minimal treatment of the inju-
ries. When her symptoms continued, a second referral for an inde-
pendent medical examination resulted in a diagnosis of reflex sym-
pathetic dystrophy. The plaintiffs contend that Citizens had a duty
to conform Cynthia's treatment to the recommendations of the sec-
ond doctor and to explain to her his diagnosis and recommended
treatment. They contend further that Citizens' failure to do so
resulted in her not receiving proper treatment until it was too late
to be effective. The court, Claudia House Morcom, J., denied Citi-
zens' motion for summary disposition on the ground that its han-
dling of the claim violated Michigan's Uniform Trade Practices Act,
MCL 500.2001 *et seq.*; MSA 24.12001 *et seq.* The Court of Appeals,
MURPHY, P.J., and D. E. HOLBROOK, JR., and NEFF, JJ., denied leave to
appeal (Docket No. 165546). The Supreme Court remanded the
case to the Court of Appeals as on leave granted. 444 Mich 864
(1993). On remand, the Court, O'CONNELL, P.J., and REILLY, J. (D. E.
SHELTON, J., dissenting), reversed in an unpublished opinion per
curiam, concluding that Citizens did not owe the plaintiff a duty to
conform her treatment to the recommendations of the second doc-
tor or to explain his diagnosis and recommendations to her. It
found further that Citizens did not voluntarily undertake those
duties (Docket No. 169023). The plaintiffs appeal.

In a unanimous opinion by Justice TAYLOR, the Supreme Court
*held*:

As a matter of law, a worker's compensation carrier owes no
duty to an injured claimant to conform medical treatment to the
recommendations of a physician to whom the carrier referred the
claimant or to explain to the claimant the physician's diagnosis and
recommended treatment.

1. The Worker's Disability Compensation Act provides a comprehensive system for the treatment of injured workers that contemplates a claimant's active role in obtaining medical treatment, including choosing the provider of any necessary services. The claimant's right to choose the provider is subject only to the employer's and carrier's option to petition the worker's compensation bureau for resolution of a dispute if either is dissatisfied with the claimant's choice. Implicit in a carrier's duty under the WDCA to pay for reasonable medical treatment and its right to object to a claimant's choice of provider is its ability to refer the claimant to a particular provider or recommend that a claimant get a second opinion. Although the WDCA permits a carrier to undertake such actions, it does not impose any duty on the carrier to do so. In light of the active role for a claimant envisioned by the WDCA, a carrier lacks sufficient control over a claimant's treatment to conform treatment to a particular recommendation.

2. A claimant's freedom to make treatment choices, like any freedom, is subject to mishandling and poor judgment and may result in injury. The remedy the plaintiff proposes would strip away an injured claimant's ability to select among treatment options and give authority over treatment to the insurer. That remedy is not provided by the WDCA, has never been endorsed in Michigan case law, and is not found in the contract at issue. If the law is to be changed, it should be done by the Legislature after full consideration and debate concerning its advisability and effect.

3. The Uniform Trade Practices Act, MCL 500.2001 *et seq.*; MSA 24.12001 *et seq.*, does not impose the asserted duties on a worker's compensation carrier. The act regulates trade practices of the insurance industry. Unfair trade practices specific to worker's compensation relate to a carrier's relationship with an employer, not its relationship with a claimant. In this case, while the plaintiff alleged that the defendant breached its duties under the act, no duties owed to the plaintiff were identified, nor were any duties related to the allegations of the plaintiff's complaint.

4. Michigan common law likewise imposes none of the duties alleged on a worker's compensation carrier. Liability under the common law is imposed on a worker's compensation carrier with respect to a claimant only in cases of misfeasance, not nonfeasance.

5. Whether Citizens voluntarily assumed the asserted duties by its active participation in the plaintiff's treatment was not raised in her complaint or in her brief in the Court of Appeals. Rather, it first was raised at oral argument in the Court of Appeals. Accordingly, it was not properly before the Court of Appeals or the Supreme

Court, and, thus, the plaintiff failed to state a claim that Citizens voluntarily assumed such duties.

Affirmed.

*Gordon, Cutler & Hoffman* (by *Donald M. Cutler*) for plaintiffs-appellants.

*Schellhase, Rekiel & Mitcham* (by *Kevin L. Davis*) and *Gross, Nemeth & Silverman, P.L.C.*, of counsel (by *Steven G. Silverman*), for defendant-appellee.

TAYLOR, J. This case presents the issue whether a worker's compensation carrier has duties to an injured claimant to conform the claimant's treatment to the recommendations of a physician to whom the carrier refers the claimant and to explain such physician's diagnosis and recommended treatment to the claimant. We hold that, as a matter of law, a worker's compensation carrier owes no such duties to a claimant. We also hold that plaintiff failed to state a claim that defendant voluntarily undertook such duties here. Therefore, we affirm the decision of the Court of Appeals, which reversed the trial court's denial of defendant's motion for summary disposition.

I

Plaintiff,[1] a press operator, injured her hand and arm at work on August 21, 1989, when she slipped and struck her hand and arm on a table. She received treatment at the Garden City Hospital emergency room on August 22, 1989. Defendant Citizens Insurance Company of America, the worker's compensation carrier of plaintiff's employer, sent her to the

---

[1] Throughout this opinion, "plaintiff" refers to Cynthia Blackwell. The loss of consortium claim of Donald Blackwell, plaintiff's husband, is derivative of her claims.

Detroit Industrial Clinic, where she was examined on August 23, 1989. The Detroit Industrial Clinic referred her to Dr. Moossavi, who examined her on August 24, 1989. The clinic and Dr. Moossavi apparently prescribed minimal medical treatment for her injuries. Because plaintiff's symptoms continued, Citizens sent her to Dr. Sahn for an independent medical examination, which occurred on January 10, 1990. In his January 22, 1990, report, Dr. Sahn's diagnosis included RSD—reflex sympathetic dystrophy,[2] and advised a particular course of treatment. To be noted is that neither the clinic nor Dr. Moossavi had diagnosed plaintiff to be suffering with RSD. Plaintiff acknowledges that Citizens provided her with a copy of Dr. Sahn's report and directed her to forward a copy to her physician. However, plaintiff's insurance expert averred that her physician was not a specialist who would be cognizant of RSD. This is important because plaintiff claims that RSD is only effectively treatable in the early stages and that she did not receive the course of treatment recommended by Dr. Sahn. In June 1990, Citizens referred plaintiff to Dr. Sperl for examination and evaluation. Plaintiff contends that negligence by Citizens resulted in her not being properly treated for RSD until it was too late for effective treatment.

---

[2] "RSD is a descriptive term meaning a complex disorder or group of disorders that may develop as a consequence of trauma affecting the limbs, with or without an obvious nerve lesion. RSD may also develop after visceral diseases, and central nervous system lesions or, rarely, without an obvious antecedent event. It consists of pain and related sensory abnormalities, abnormal blood flow and sweating, abnormalities in the motor system and changes in structure of both superficial and deep tissues ('trophic' changes)." Bond, Charlton & Woolf, eds, *Proceedings of the VIth World Congress on Pain* (Amsterdam, New York, Oxford: Elsevier, 1991), ch 44, p 373.

On November 25, 1991, plaintiff filed a four-count complaint: I—medical malpractice by the clinic, II—medical malpractice by Dr. Moossavi, III—ordinary negligence of Citizens, and IV—ordinary negligence of the clinic and Dr. Moossavi. Pursuant to the parties' stipulation that the clinic and Dr. Moossavi were not agents of Citizens, the circuit court entered a dismissal against them. Thus, the only remaining claims were those of direct negligence by Citizens. Specifically, in ¶ 44 of her complaint, plaintiff alleged that Citizens breached asserted duties by the following omissions:

> F. By failing to follow and conform medical treatment to the recommended course of treatment of Dr. Leonard Sahn, a neurologist employed by Citizens to evaluate, diagnose and recommend treatment for injured insured's employees, and particularly for plaintiff Blackwell.
>
> G. By failing to implement a medical review program to notify the examined claimant of the diagnosis, suggest[ed] treatment [regimen], need for prompt treatment and dangers of failure to receive prompt treatment, under the particular circumstances as set forth when Citizens had provided appropriate medical care and attention to plaintiff Blackwell, through Dr. Sahn, who was found by this defendant's agent to be suffering from early reflex sympathetic dystrophy.

Citizens moved for summary disposition pursuant to MCR 2.116(C)(8) and (10).[3] The circuit court denied this motion, relying on the affidavit of plaintiff's insurance expert who averred that Citizen's handling of the claim violated Michigan's Uniform Trade

---

[3] Citizens also sought summary disposition pursuant to MCR 2.116(C)(4) (court lacks jurisdiction of the subject matter), but that portion of the motion is irrelevant to the issues raised on appeal.

Practices Act, MCL 500.2001 *et seq.*; MSA 24.12001 *et seq.* The Court of Appeals denied leave to appeal, but this Court remanded the matter to the Court of Appeals as on leave granted. On remand, the Court of Appeals reversed the denial of summary disposition, concluding that Citizens did not owe plaintiff the duties alleged and did not voluntarily undertake these duties. Unpublished opinion per curiam, issued June 4, 1996 (Docket No. 169023). Judge SHELTON dissented, finding that, while the Worker's Disability Compensation Act did not impose the asserted duties on Citizens, Citizens may have undertaken a duty to provide medical care for plaintiff by assuming an "active participation in the course of plaintiff's treatment, rather than merely assuming the role of paying the expenses of that treatment."

II

Appellate review of a trial court ruling on a motion for summary disposition is de novo. *Spiek v Dep't of Transportation*, 456 Mich 331; 572 NW2d 201 (1998).

> MCR 2.116(C)(8) tests the legal sufficiency of the claim on the pleadings alone to determine whether the plaintiff has stated a claim on which relief may be granted. The motion must be granted if no factual development could justify the plaintiff's claim for relief. MCR 2.116(C)(10) tests the factual support of a plaintiff's claim. The court considers the affidavits, pleadings, depositions, admissions, and other documentary evidence submitted or filed in the action to determine whether a genuine issue of any material fact exists to warrant a trial. [*Id.* at 337.]

Duty is the threshold element of a negligence action. It is well established that "where there is no legal duty there can be no actionable negligence."

*Elbert v Saginaw*, 363 Mich 463, 475; 109 NW2d 879 (1961). See also *Schultz v Consumers Power Co*, 443 Mich 445, 463; 506 NW2d 175 (1993) (GRIFFIN, J., dissenting) ("It is axiomatic that there can be no actionable negligence where there is no legal duty"). Here, plaintiff's essential claim is that a worker's compensation carrier is obligated to 1) conform a claimant's treatment to that recommended by a physician to whom the carrier refers the claimant, and 2) explain the diagnosis and recommended treatment of such a physician to the claimant. At issue then is whether Michigan law imposes these asserted duties upon a worker's compensation carrier.

Plaintiff asserts that the contract between Citizens and plaintiff's employer, which is governed by and must comply with the Worker's Disability Compensation Act, imposed the asserted duties on Citizens.[4] This is incorrect.

Determination whether the WDCA imposes the asserted duties on Citizens will also resolve whether the contract between Citizens and plaintiff's employer

---

[4] We note that plaintiff may reasonably be viewed as an intended third-party beneficiary of the contract between Citizens and her employer. This Court has held that the legislative policy behind the WDCA "is to provide financial and medical benefits to the victims of work-connected injuries in an efficient, dignified, and certain form." *Whetro v Awkerman*, 383 Mich 235, 242; 174 NW2d 783 (1970). However, even an intended third-party beneficiary is only entitled to what the contract provides. Here, the Court of Appeals correctly held:

> [P]laintiff seeks to impose obligations on the part of [Citizens] beyond those it agreed to provide. Although *Clark [v Dalman*, 379 Mich 251, 261; 150 NW2d 755 (1967)] recognized that "accompanying every contract is a common-law duty to perform with ordinary care the thing agreed to be done," there is no basis for the law to impose a duty on [Citizens] to perform more than the contract required.

imposed such duties because there is no indication here that the contract imposed duties on Citizens beyond those articulated in the WDCA.

MCL 418.315(1); MSA 17.237(315)(1) provides in pertinent part:

> The employer shall furnish, or cause to be furnished, to an employee who receives a personal injury arising out of and in the course of employment, reasonable medical, surgical, and hospital services . . . when they are needed.

Plaintiff contends that to "furnish" medical services necessarily encompasses a requirement that a worker's compensation carrier conform a claimant's treatment to that prescribed and explain a physician's diagnosis to the claimant. Yet this is not what the statute, or the contract that mirrors it, says.

It is asserted that the duty to "furnish" medical services arguably is broad enough to give a carrier the control plaintiff asserts here were this language the only reference to this issue. However, the WDCA sets up a comprehensive system for the treatment of injured workers that contemplates a claimant's active role in obtaining medical treatment, including normally choosing the provider of any necessary services. Subsection 315(1) provides, "After 10 days from the inception of medical care as provided in this section, the employee may treat with a physician of his or her own choice by giving to the employer the name of the physician and his or her intention to treat with the physician."

The claimant's right to choose the provider is subject only to the employer's and carrier's option to petition the worker's compensation bureau for resolution of a dispute if either is dissatisfied with the

claimant's choice. *Id.* Implicit in a carrier's duty under the WDCA to pay for reasonable medical treatment and its right to object to a claimant's choice of provider is its ability to refer the claimant to a particular provider or recommend that a claimant get a second opinion. That the WDCA *permits* a carrier to undertake such actions does not impose any *duty* on it to do so.

Case law development acknowledges this active role for claimants, with carriers generally becoming active only when dissatisfied with a claimant's choices. See *Dolenga v Aetna Casualty & Surety Co*, 185 Mich App 620, 624; 463 NW2d 179 (1990) (a worker's compensation carrier's role "is to pay for the treatment, not provide it"); *Reed v Top Notch Fence Installers*, 106 Mich App 248, 255; 307 NW2d 460 (1981) (the WDCA does not authorize granting the employer or carrier discretion over the choice of care).

In light of the active role for a claimant envisioned by the WDCA, a carrier lacks sufficient control over a claimant's treatment to "conform" treatment to a particular recommendation.[5]

Moreover, this case implicates the sensitive question who makes decisions regarding treatment. To put carriers in this role would place them in a dictatorial position over claimants. Surely, it is repugnant to the existing policy of this state to strip from the injured person the ability to determine which of differing courses of medical treatment to follow and to pass

---

[5] We emphasize that there is no allegation here that Citizens hampered plaintiff's ability to take an active role in her own treatment by hiding relevant information from her. Plaintiff's insurance expert averred that Citizens provided plaintiff with a copy of Dr. Sahn's independent medical examination report and directed her to forward a copy to her physician.

such authority to a claims representative of a worker's compensation carrier. However, a claimant's freedom to make treatment choices, like any freedom, is subject to mishandling and poor judgment and may result in unfortunate injuries as occurred here. Yet the remedy plaintiff proposes, which would strip away an injured claimant's ability to select among treatment options and give authority over treatment to the bureaucracy of an insurance company, has never been part of the WDCA, has never been endorsed in our case law explicating that act, and is not found in the contract at issue. (Indeed, if the contract contained any such provision, it would raise formidable questions about whether it is contrary to the public policy expressed in the WDCA.) Clearly, the current law does not give carriers such authority.

If the law is to be changed in this fashion, it should be done by the Legislature, where, after full consideration and debate concerning the advisability and effect of such a change, the decision on such an important matter could best be made. See *O'Donnell v State Farm Mut Automobile Ins Co*, 404 Mich 524, 542; 273 NW2d 829 (1979) ("The responsibility for . . . weighing the relevant considerations and choosing between competing alternatives—is the Legislature's, not the judiciary's").

For these reasons, nothing in the WDCA or contract at issue supports the duties plaintiff asserts here.

III

Plaintiff next asserts that the Uniform Trade Practices Act (UTPA), MCL 500.2001 *et seq.*; MSA 24.12001 *et seq.*, imposes the asserted duties on a worker's compensation carrier. We disagree.

The UTPA regulates trade practices of the insurance industry. It prohibits specified trade practices and practices "determined . . . to be an unfair method of competition or an unfair or deceptive act or practice in the business of insurance." Subsection 2003(1).[6] Section 2016 discusses unfair trade practices specific to worker's compensation insurance; however, all these relate to a carrier's relationship with an employer, not its relationship with a claimant. Here, plaintiff's insurance expert, in his affidavit, opined that defendant breached duties under the UTPA, but never identified any duties owed to plaintiff or related any such duties to the allegations in plaintiff's complaint. This is likely because of the fact that the duties outlined in the UTPA run to the employer rather than the employee. Thus, the UTPA cannot be the source of the duties asserted by plaintiff here.

IV

Plaintiff next asserts that Michigan common law imposes the asserted duties on a worker's compensation carrier. We disagree.

In her complaint, plaintiff alleges that she was injured by certain omissions of Citizens. Such allegations are, of course, allegations of nonfeasance, rather than misfeasance. Importantly, Michigan common law imposes liability on a worker's compensation carrier with respect to a claimant only in cases of *misfeasance*.[7] For example, a claimant may

---

[6] For example, among the prohibited trade practices are misrepresentations, §§ 2005 and 2005a, and failure to timely pay claims, § 2006.

[7] "[T]he distinction between 'misfeasance' and 'nonfeasance' (the distinction between active misconduct and passive inaction) is deeply rooted in the law of negligence." *People v Kevorkian*, 447 Mich 436, 471; 527

recover against a carrier for vicarious liability for malpractice by a physician to whom the carrier referred the claimant. *Pankow v Sables*, 79 Mich App 326, 331; 261 NW2d 311 (1977). Also, formerly, a claimant could recover against a carrier who negligently performed a safety inspection. *Andrews v Ins Co of North America*, 60 Mich App 190, 196; 230 NW2d 371 (1975), remanded on other grounds 394 Mich 464; 231 NW2d 645 (1975).[8] However, the parties cite no Michigan authority, nor are we aware of any, imposing liability on a carrier for *nonfeasance* with respect to a claimant as alleged here.

For all these reasons, we conclude that, as a matter of law, a worker's compensation carrier owes no duty to an injured claimant either to conform the claimant's medical care to that recommended by a physician to whom the carrier referred the claimant or to explain to the claimant the diagnosis and recommended treatment of such a physician.[9]

V

Next, plaintiff contends that Citizens voluntarily assumed the asserted duties by its "active participation" in her treatment. Plaintiff did not raise this issue in her complaint before the trial court or in her brief before the Court of Appeals. This issue was first raised at oral argument before the Court of Appeals.

NW2d 714 (1994) (opinion of CAVANAGH, C.J., joined by BRICKLEY and GRIFFIN, JJ.).

[8] Section 827 of the WDCA was amended in 1972 to relieve carriers from third-party liability for negligence in safety inspections.

[9] Citizens argues that imposing the asserted duties on worker's compensation carriers would put them at risk of practicing medicine without a license in violation of MCL 333.17011(1); MSA 14.15(17011)(1). Our conclusion that Michigan law does not impose the asserted duties on a carrier makes it unnecessary for us to address this issue.

Accordingly, this theory was not properly before the Court of Appeals, nor is it properly before this Court. See *Booth Newspapers, Inc v Univ of Michigan Bd of Regents*, 444 Mich 211, 234; 507 NW2d 422 (1993). However, in the interest of completeness and because the Court of Appeals considered this issue, we will briefly address it.

Plaintiff's theory that Citizens voluntarily assumed the asserted duties is grounded in *Smith v Allendale Mut Ins Co*, 410 Mich 685, 705; 303 NW2d 702 (1981), which states:

> Section 324A of the [2] Restatement Torts, 2d, [p 142] provides that, in certain circumstances, one who undertakes to render services to another which he should recognize as necessary for the protection of a third person is subject to liability if his "failure to exercise reasonable care to perform his undertaking" results in physical harm to the third person.

While acknowledging this theory, *Smith* held that a fire insurer "who does not undertake to inspect for the insured's benefit owes no duty to the insured or the insured's employees to inspect with reasonable care," but is subject to liability if its affirmative conduct creates or increases a fire hazard. *Id.* at 706. The focus is on the purpose of the undertaking. Where a party undertakes services for his own benefit, rather than for the benefit of a plaintiff, it is not one of the "certain circumstances" under which the "voluntary undertaking" doctrine can be invoked.

Here, plaintiff contends that Citizens' "undertak[ing] to render services" as it is described in 2 Restatement Torts, 2d, § 324A, p 142, is demonstrated by Citizens' June, 1990, referral of plaintiff to Dr.

Sperl for treatment after having previously referred her to Dr. Sahn for the independent medical examination in January, 1990.

As is acknowledged, Citizens referred plaintiff to Dr. Sahn in January, 1990, for an independent medical examination. A referral for such an examination cannot reasonably be interpreted to be a voluntary undertaking to benefit plaintiff because its purpose is diagnosis and evaluation, not medical treatment. See *VanSickle v McHugh*, 171 Mich App 622, 626-627; 430 NW2d 799 (1988) (no doctor-patient privilege attaches to an independent medical examination because the examination is not for the purposes of treatment).

Yet, plaintiff now asserts that Citizens' June, 1990, referral to Dr. Sperl was for treatment and, accordingly, could be interpreted as a voluntary undertaking for plaintiff's benefit. However, plaintiff did not plead that this referral was for treatment. In her complaint, plaintiff does not allege *any* negligence relating to Dr. Sperl's examinations. In fact, plaintiff's factual allegations all relate to Citizens' alleged breach of duties in response to Dr. Sahn's diagnosis, not any alleged breaches in response to Dr. Sperl's efforts.[10] Thus, by her own pleadings, any arguable voluntary undertaking by Citizens in referring plaintiff to Dr. Sperl was not done negligently. Further, any vicarious liability claim against Citizens would also clearly fail because plaintiff has not alleged a prima facie case of liability against Dr. Sperl. See *Locke v Pachtman*, 446 Mich 216, 233; 521 NW2d 786 (1994).

---

[10] Plaintiff argues that the alleged negligence consists of Citizens' agents' failure to implement Dr. Sahn's recommendations "until months later when [Citizens] referred Plaintiff to Dr. Sperl for treatment; by this time, it was too late."

CONCLUSION

For these reasons, we hold that a worker's compensation carrier owes no duty to a claimant to conform the claimant's treatment to the recommendations of a physician to whom the carrier refers the claimant or to explain such physician's diagnosis and recommendations to the claimant. Further, we hold that plaintiff's complaint failed to state a claim that Citizens voluntarily assumed such duties here. Accordingly, we affirm the Court of Appeals decision.

MALLETT, C.J., and BRICKLEY, CAVANAGH, BOYLE, WEAVER, and KELLY, JJ., concurred with TAYLOR, J.