610 N.W.2d 548 (2000)
CITY OF PORT HURON, Plaintiff-Appellee,
v.
AMOCO OIL COMPANY, INC. and Grand Trunk Western Railroad, Defendants-Appellants.
Docket No. 112892, COA No. 187422.
Supreme Court of Michigan.
May 9, 2000.
On order of the Court, the Court having granted leave to appeal and having considered the briefs and oral argument by the parties, the order of September 29, 1999 which granted leave to appeal is VACATED and leave to appeal is DENIED because the Court is no longer persuaded the questions presented should be reviewed by this Court.
CORRIGAN, J., not participating.
MARILYN J. KELLY, J., states:
I respectfully dissent from the Court's decision to withdraw its grant of leave to appeal. At issue is the correct interpretation of the private party cost recovery provision[1] of the Michigan Environmental Response Act (MERA). MCL 299.601 et seq.; MSA 13.32(1) et seq.[2] That issue is one of first impression and is ripe for resolution in the context of this case.
The private party cost recovery provision of the MERA authorizes a private party to recoup costs it incurred to remediate environmentally contaminated property from parties responsible for the contamination. MCL 299.612(2)(b); MSA 13.32(12)(2)(b). The private party must be able to prove that its costs were necessary and incurred consistent with the rules promulgated by the DNR. Id. The rules state that the DNR may request a party to complete a remedial investigation, a feasibility study, and a remedial action plan. 1999 AC, R 299.5511-5515.
In this case, plaintiff did not complete a remedial investigation, a feasibility study, or a remedial action plan. Plaintiff merely identified that its property was contaminated and proceeded to clean it up so that *549 it could continue with its plan to build luxury condominiums on the site. After the completion of its clean-up activity, plaintiff sued defendants under § 12(2)(b), and the trial court awarded it $1.25 million. The Court of Appeals affirmed. 229 Mich.App. 616, 583 N.W.2d 215 (1998).
This case presents the Court with an opportunity to address an important issue: how to correctly apply the limitations contained in § 12(2)(b) to a private party cost recovery action. The Court of Appeals decision is published and the applicable statutory provision and administrative rules remain in effect today. Thus, the issue is jurisprudentially significant and will continue to be debated until this Court makes a dispositive ruling.
The parties have made numerous arguments and raised several subissues that are worthy of this Court's consideration. First, what does § 12(2)(b) require a plaintiff to show to prove that its costs were incurred "consistent with" the rules? Did the lower courts render that limitation meaningless when they held that compliance with rules 511-515 is only required upon a request by the DNR? Must a private party consult with the DNR before initiating its clean-up activity to determine whether compliance is required?
Second, how can a court determine whether the costs incurred by a private party were necessary? Is an expensive remediation effort like that performed by plaintiff here unnecessary when a cheaper method would adequately clean up the property? When and how does cost become a consideration in determining whether costs incurred were necessary?
There is no reason to avoid addressing these issues. Federal case law exists that this Court may use as guidance to interpreting provisions similar to those of the federal Comprehensive Environmental Response, Compensation, and Liability Act (CERCLA).[3] Also, there are numerous administrative rules promulgated in connection with the MERA that provide guidance to the application of rules 511-515 and the limitations contained in § 12(2)(b). See 1999 AC, R 299.5601-5725. While certainly the bench and bar will be aided by the Court of Appeals decision in this case, I believe that they would benefit even further from this Court's analysis of that decision and an opinion on the merits.
Furthermore, it goes without saying that the MERA is a complex statutory scheme worthy of this Court's attention. See Flanders Industries, Inc. v. Michigan, 203 Mich.App. 15, 20-21, 512 N.W.2d 328 (1993). The Court of Appeals recognized the difficulty presented by the MERA when it stated in this case that the section at issue "appears to have been anything but a model of clarity." 229 Mich.App. at 624, 583 N.W.2d 215. Therefore, I am in disagreement with the decision of the Court to forgo issuing an opinion. I believe that we providently granted defendant's application for leave to appeal.
MARKMAN, J. (dissenting).
I respectfully dissent from the decision to vacate the grant and deny because I believe the issues presented clearly merit this Court's review.
This case involves the private cost recovery provisions of the former Michigan Environmental Response Act (MERA), M.C.L. § 299.601 et seq; MSA 13.32(1) et seq.[4] The MERA allowed certain parties to recover the necessary costs of remediating environmental *550 contamination from potentially responsible parties, including the former owners of the contaminated property. The question presented to this Court by the instant appeal is whether the plaintiff in a MERA private cost recovery action must prove that it acted "consistent with rules relating to the selection and implementation of response activity" promulgated under the MERA.
In this case, plaintiff remediated contamination caused by decades of industrial use, transforming a former brownsfield site into a residential development. While such efforts are highly commendable, it is entirely another question whether all the costs of such efforts are properly recoverable from the former owners of the contaminated site. The Legislature has enacted specific requirements that private parties must satisfy in order to recover remediation costs from another private party.
Plaintiff's action is premised on M.C.L. § 299.612(2)(b); MSA 13.32(12)(2)(b). In order to recover remediation costs under this statutory section, a plaintiff is required to prove the following: 1) the plaintiff incurred remediation costs, 2) those costs were necessary, and 3) those necessary costs were incurred "consistent with rules relating to the selection and implementation" of remediation activity promulgated under the MERA.
In this case, plaintiff apparently undertook its remediation efforts without consulting the DNR, without consulting defendant, and without following the procedures contained in the administrative rules for selecting and implementing remediation activity. Specifically, plaintiff failed to compare the cost of its remediation plan with other alternatives. Plaintiff nevertheless sought, and recovered, approximately 1.25 million dollars from the property's former owners, in compensation for its remediation efforts. On appeal, the parties disputed whether the plaintiff proved the second and third elements of its prima facie case, i.e., whether the costs incurred were "necessary" and whether those costs were incurred "consistent with" the MERA administrative rules.
Analyzing whether the instant plaintiff carried its prima facie burden on these elements would require this Court to interpret the language of M.C.L. § 299.612(2)(b); MSA 13.32(12)(2)(b). In order to do so, this Court would be faced with several key questions: 1) is the statutory term "necessary" mere surplusage, or does the phrase "necessary costs of response activity" mean something more than remediation activity costs actually incurred in the course of cleaning up environmental contamination; 2) are the DNR "rules relating to the selection and implementation" of remediation activity[5] mandatory or permissive in nature; 3) in order to act "consistent with" the MERA administrative rules, must a party follow the procedures contained in those rules for selecting and implementing response activity, specifically the preparation of a remedial investigation, feasibility study, or remedial action plan; 4) does a party act "consistent with" the MERA administrative rules merely by avoiding conduct in direct conflict with a DNR directive; and 5) do the cost-consideration provisions of the MERA administrative rules require a balancing of the comparative costs of alternative remediation options, in order to determine what costs are "necessary."
I believe that this case presents several important issues for this Court's consideration. The requirements for proving the prima facie elements in private party cost recovery actions will affect the course of large-scale efforts to remediate environmental contamination in this state. Further, *551 I believe the parties have presented meritorious arguments regarding the proper construction and application of the pertinent statutory language. I continue to believe that this Court should review the analysis employed by the Court of Appeals, and believe that leave to appeal was providently granted.
NOTES
[1] MCL 299.612; MSA 13.32(12).
[2] In 1994, the Legislature amended and renamed the statute, effective March 30, 1995. See 1994 PA 451. It is now included as part 201 of the Natural Resources and Environmental Protection Act (NREPA) and is codified at M.C.L. § 324.20101 et seq.; MSA 13A.20101 et seq. Because plaintiff brought this action before the amendments, the NREPA does not apply. Accordingly, this statement will refer to statutory provisions as they existed before their amendment.
[3] 42 U.S.C. § 601 et seq. In Kelley ex rel. Michigan v. EI duPont de Nemours & Co., 786 F.Supp. 1268, 1280 (E.D.Mich., 1992), the federal court recognized that the MERA is "patterned after" the CERCLA. Thus, federal decisions that have interpreted the CERCLA may be helpful to us in ascertaining the proper application of the MERA in this case.
[4] Although this statute was recodified by 1994 PA 451 as the National Resources and Environmental Protection Act (NREPA), M.C.L. § 324.20101 et seq.; MSA 13A.20101 et seq., the statutory language applicable to the parties' dispute is that found in the former text of the MERA.
[5] The parties agree that the "rules" referenced in M.C.L. § 299.612(2)(b); MSA 13.32(12)(2)(b) include parts 5, 6, and 7 of the MERA administrative rules, 1999 AC, R 299.5501 et seq., 299.5601 et seq., and 299.5701 et seq. Part 5 is titled "Response Activities," part 6 is titled "Selection of Remedial Action," and part 7 is titled "Cleanup Criteria."