**Michigan Supreme Court**
**Lansing, Michigan 48909**

# Opinion

Chief Justice
Maura D. Corrigan

Justices
Michael F. Cavanagh
Elizabeth A. Weaver
Marilyn Kelly
Clifford W. Taylor
Robert P. Young, Jr.
Stephen J. Markman

**FILED MAY 30, 2001**

MACOMB COUNTY PROSECUTING ATTORNEY,

    Plaintiff-Appellee,

v                       No.  114444

SHERRI MURPHY,

    Defendant-Appellant.

_____

BEFORE THE ENTIRE BENCH

CORRIGAN, C.J.

We granted leave in this case to consider whether defendant violated the incompatible offices act, MCL 15.181 *et seq.*; MSA 15.1120(121) *et seq.*, by simultaneously holding positions as the delinquent personal property tax coordinator in the Macomb County treasurer's office and as an elected member of the Harrison Township Board of Trustees. *On review of the incompatible offices act as a whole, we conclude that the phrase "public offices held by a public official," MCL*

*15.181(b); MSA 15.1120(121)(b), encompasses positions of public employment.* However, we conclude that defendant's positions are not inherently incompatible because only a potential breach of duty of public office arises from the ability of the township to contract with the county for the collection of its delinquent personal property taxes. We therefore reverse the decision of the Court of Appeals and remand to the circuit court for entry of an order granting summary disposition for defendant.

## I.  Factual Background and Procedural Posture

Defendant is an elected trustee of Harrison Township. She is also the delinquent personal property tax coordinator in the Macomb County treasurer's office. Under MCL 211.56(3); MSA 7.100(3), a township board of trustees and the board of county commissioners, with the concurrence of the county treasurer, may agree that the county treasurer will collect the township's delinquent personal property taxes. The Harrison Township Board of Trustees considered such an arrangement in March 1994. A trustee eventually moved that the township continue to collect its delinquent taxes. Defendant supported that motion. The motion carried.

The possibility of having the county treasurer collect the township taxes was, however, raised again five months later. A trustee requested additional information about the revenue generated if the township were to collect its own

2

delinquent taxes. In light of this development, the board requested plaintiff Macomb County Prosecuting Attorney's opinion whether defendant had a conflict of interest because of her dual positions.

Plaintiff opined that defendant's offices were "not necessarily incompatible, but . . . will be deemed to be incompatible if the township trustee is presented with a situation in which he or she is required to vote on a proposal to have the county collect delinquent personal property taxes." In this case, plaintiff concluded that even though the board had already voted to continue collecting the taxes, defendant's offices were incompatible because the board was still exploring the possibility of entering into an agreement with the county. Defendant declined to follow plaintiff's suggestion that she resign from one of her positions.

Plaintiff then sought a declaratory ruling that defendant had violated the incompatible offices act by breaching a duty of public office. The trial court granted summary disposition for plaintiff under MCR 2.116(C)(10). The court concluded that defendant's positions were incompatible offices because the board of trustees had considered the question whether the county treasurer should collect delinquent taxes and defendant's vote affected her interest as tax coordinator. The trial court directed that defendant vacate one of the positions. The court denied defendant's motion for

reconsideration, but stayed enforcement of its order pending appeal.

The Court of Appeals granted defendant's delayed application for leave to appeal and affirmed.[1] The Court concluded that a breach of duty arises when a public official "'cannot protect, advance, or promote the interest of both offices simultaneously.'" 233 Mich App 381, quoting OAG, 1997-1998, No 6931, p 5 (February 3, 1997). The Court further reasoned that a breach occurs when an "issue arises in which one constituency's interests may conflict with the interests of a separate constituency represented by the official." *Id.* at 382. It rejected defendant's arguments that the extent of conflict between her positions was minimal and that a question of fact existed regarding how a township-county agreement would affect her position as tax coordinator. The Court also concluded that the trial court properly found that defendant voted on a proposal to have the county collect the township taxes. The Court reasoned that defendant implicitly voted not to enter into an agreement with the county when she voted in favor of the township collecting its own taxes.[2]

---

[1] 233 Mich App 372; 592 NW2d 745 (1999).

[2] Defendant additionally argued that the trial court erred in denying her motion to disqualify plaintiff because of a conflict of interest. The Court of Appeals affirmed the trial court's ruling. Defendant does not challenge that portion of the Court of Appeals decision.

4

This Court granted defendant's application for leave to appeal. 462 Mich 854 (2000).

## II. Discussion

The question presented is whether defendant violated the incompatible offices act by simultaneously holding positions as the delinquent personal property tax coordinator in the Macomb County treasurer's office and as an elected member of the Harrison Township Board of Trustees. We conclude that defendant's positions are not inherently incompatible because only a potential breach of duty of public office arises from the ability of the township to contract with the county for the collection of its delinquent personal property taxes.

### A. The Incompatible Offices Act

The incompatible offices act[3], at MCL 15.182; MSA 15.1120(122), contains the general prohibition against holding incompatible offices. It provides that "[e]xcept as provided in [MCL 15.183; MSA 15.1120(123)], a public officer or public employee shall not hold 2 or more incompatible offices at the same time."[4]

---

[3] The Legislature enacted the incompatible offices act in 1978, apparently in response to a 1978 opinion of the Attorney General that the positions of public school superintendent and state university board member were incompatible offices under the common law. House Legislative Analysis, HB 6699, January 22, 1979.

[4] Under MCL 15.181(d); MSA 15.1120(121)(d), a "public employee" is

(continued...)

5

The Legislature defined the phrase "incompatible offices" for purposes of the act. MCL 151.181(b); MSA 15.1120(121)(b) provides:

> "Incompatible offices" means public offices held by a public official which, when the official is performing the duties of any of the public offices held by the official, results in any of the following with respect to those offices held:
>
> (i) The subordination of 1 public office to another.
>
> (ii) The supervision of 1 public office by

[4](...continued)
an employee of this state, an employee of a city, village, township, or county of this state, or an employee of a department, board, agency, institution, commission, authority, division, council, college, university, school district, intermediate school district, special district, or other public entity of this state or of a city, village, township, or county in this state, but does not include a person whose employment results from election or appointment.

A "public officer," in contrast, is

> a person who is elected or appointed to any of the following:
>
> (i) An office established by the state constitution of 1963.
>
> (ii) A public office of a city, village, township, or county in this state.
>
> (iii) A department, board, agency, institution, commission, authority, division, council, college, university, school district, intermediate school district, special district, or other public entity of this state or a city, village, township, or county in this state. [MCL 15.181(e); MSA 15.1120(121)(e).]

another.

(iii) A breach of duty of public office.

The Legislature also created exceptions to the general prohibition on holding incompatible offices. MCL 15.183; MSA 15.1120(123)[5] now generally allows public officers and

_____

[5] MCL 15.183; MSA 15.1120(123) provides:

(1) Section 2 does not prohibit a public officer's or public employee's appointment or election to, or membership on, a governing board of an institution of higher education. However, a public officer or public employee shall not be a member of governing boards of more than 1 institution of higher education simultaneously, and a public officer or public employee shall not be an employee and member of a governing board of an institution of higher education simultaneously.

(2) Section 2 does not prohibit a member of a school board of 1 school district from being a superintendent of schools of another school district.

(3) Section 2 does not prohibit a public officer or public employee of a city, village, township, school district, community college district, or county from being appointed to and serving as a member of the board of a tax increment finance authority established pursuant to the tax increment finance authority act, Act No. 450 of the Public Acts of 1980, being sections 125.1801 to 125.1830 of the Michigan Compiled Laws, a downtown development authority established pursuant to Act No. 197 of the Public Acts of 1975, being sections 125.1651 to 125.1681 of the Michigan Compiled Laws, or a local development finance authority established pursuant to the local development financing act, Act No. 281 of the Public Acts of 1986, being sections 125.2151 to 125.2174 of the Michigan Compiled Laws.

(4) Section 2 does not do any of the
(continued...)

7

[5](...continued)
following:

(a) Prohibit public officers or public employees of a city, village, township, or county having a population of less than 25,000 from serving, with or without compensation, as emergency medical services personnel as defined in section 20904 of the pubic health code, Act No. 368 of the Public Acts of 1978, being section 333.20904 of the Michigan Compiled Laws.

(b) Prohibit public officers or public employees of a city, village, township, or county having a population of less than 25,000 from serving, with or without compensation, as a firefighter in that city, village, township, or county if that firefighter is not any of the following:

(i) A full-time firefighter.

(ii) A fire chief.

(iii) A person who negotiates with the city, village, township, or county on behalf of the firefighters.

(c) Limit the authority of the governing body of a city, village, township, or county having a population of less than 25,000 to authorize a public officer or public employee to perform, with or without compensation, other additional services for the unit of local government.

(5) This section does not relieve a person from otherwise meeting statutory or constitutional qualifications for eligibility to, or the continued holding of, a public office.

(6) This section does not apply to allow or sanction activity constituting conflict of interest prohibited by the constitution or laws of this state.

(7) This section does not allow or sanction
(continued...)

employees to serve on boards of institutions of higher education and permits a school superintendent to serve as a member of a school board of another district. The statute also allows public officers and employees of local units of government to serve as members of boards of tax increment finance authorities, downtown development authorities, and local development finance authorities. Finally, the statute generally allows public officers and employees of units of local government having small populations to serve as emergency medical services personnel, firefighters, and perform other services for that unit of government.

The act does not create a private cause of action. MCL 15.184; MSA 15.1120(124). Rather, it grants the Attorney General and county prosecuting attorneys the authority to apply to the circuit court "for injunctive or other appropriate judicial relief or remedy." *Id.* A violation of the act does not render an action of a public officer or public employee absolutely void. MCL 15.185; MSA 15.1120(125). Instead, the decision to void an action lies within the discretion of the circuit court. *Id.*

---

[5](...continued)
specific actions taken in the course of performance of duties as a public official or as a member of a governing body of an institution of higher education that would result in a breach of duty as a public officer or board member.

## B. Public Offices Held By A Public Official

We reject defendant's initial argument[6] that her positions are not "incompatible offices" because her position as delinquent personal property tax coordinator is not a "public office." The question is one of statutory construction, which we review de novo. *The Herald Co v Bay City,* 463 Mich 111, 117; 614 NW2d 873 (2000). Our task is made difficult by the Legislature's inartful draftsmanship. In particular, the Legislature used the undefined term "public official" in defining the phrase "incompatible offices" instead of the defined terms "public officer" and "public employee." Construing the act as a whole, however, we conclude that the phrase "public offices held by a public official" encompasses public employment.

In considering a question of statutory construction, this Court begins by examining the language of the statute. *Sun Valley Foods Co v Ward,* 460 Mich 230, 236; 596 NW2d 119 (1999). We read the statutory language in context to determine whether ambiguity exists. *Id.* at 237; see *Consumers Power Co v Public Service Comm,* 460 Mich 148, 163, n 10; 596 NW2d 126 (1999). If the language is unambiguous, judicial

---

[6] This issue is not properly preserved because defendant first raised it in her application for leave to appeal to this Court. See *Kratze v Independent Order of Oddfellows,* 442 Mich 136, 142; 500 NW2d 115 (1993). We address it nonetheless in the interest of completeness. See *Blackwell v Citizens Ins Co,* 457 Mich 662, 672; 579 NW2d 889 (1998).

construction is precluded. *Frankenmuth Mut Ins Co v Marlette Homes, Inc,* 456 Mich 511, 515; 573 NW2d 611 (1998). We enforce an unambiguous statute as written. *Sun Valley Foods, supra* at 236. Where ambiguity exists, however, this Court seeks to effectuate the Legislature's intent through a reasonable construction, considering the purpose of the statute and the object sought to be accomplished. *Frankenmuth Mut Ins, supra* at 515.

The statute involved in this case defines the phrase "incompatible offices" as "public offices held by a public official which, when the official is performing the duties of any of the public offices held by the official, results in" the subordination of one public office to another, the supervision of one public office by another, or a breach of duty of public office. MCL 151.181(b); MSA 15.1120(121)(b).

We construe the undefined terms "public office" and "public official" according to the common usage of the language. *Consumers Power, supra* at 163. The dictionary definitions of the words "public," "official," and "officer" suggest that the terms "public official" and "public officer" are synonymous.[7] Words, however, are given meaning by context

_____

[7] This Court often consults dictionary definitions to ascertain the generally accepted meaning of words. *Consumers Power, supra* at 163, n 10. *Random House Webster's College Dictionary,* p 1091, defines the word "public" as meaning "of, pertaining to, or being in the service of a community or

(continued...)

11

or setting.  *Id.* at 163, n 10.  In defining the phrase "incompatible offices," the Legislature used the term "public official," rather than the term it defined in the statute—"public officer."  The Legislature's use of this undefined term when it could have easily employed the defined term suggests that the terms are not synonymous for purposes of this statute.  See 82 CJS, Statutes, § 310, pp 400-401.  We therefore conclude that the statutory language "public offices held by a public official" is ambiguous.

To resolve this ambiguity, we examine the other provisions of the act to ascertain whether the Legislature intended to include positions of public employment within the prohibition on incompatible offices.  We construe an act as a

---

[7](...continued)
nation."  That dictionary includes the following among its definitions of "office":

> 1. a place where business is conducted. . . .
> 4.  the staff that works in a place of business.
> 5. a position of duty, trust, or authority; *the office of president.* 6. employment or position as an official: *to seek office. . . .* [*Id.* at 939, emphasis in original.]

It defines the word "official" as follows:

> *n.* 1. a person appointed or elected to an office or charged with certain duties.  *-adj.* 2. of or pertaining to an office or position of duty, trust, or authority: *official powers.* 3. appointed, authorized, or approved by a government or organization. 4. holding office. 5. public and formal; ceremonial. [*Id, emphasis in original.*]

12

whole to harmonize its provisions and carry out the purpose of the Legislature. *Farrington v Total Petroleum, Inc,* 442 Mich 201, 209; 501 NW2d 76 (1993); *Gusler v Fairview Tubular Products,* 412 Mich 270, 291; 315 NW2d 388 (1981), reh gtd 414 Mich 1102 (1982), app dis 414 Mich 1102 (1983). "[T]he interpretation to be given to a particular word in one section [is] arrived at after due consideration of every other section so as to produce, if possible, a harmonious and consistent enactment as a whole." *Grand Rapids v Crocker,* 219 Mich 178, 182-183; 189 NW 221 (1922).

We conclude that §§ 2 and 3 of the incompatible offices act evince a legislative intent to include positions of public employment within the scope of the act. MCL 15.182; MSA 15.1120(122) provides that "a public officer *or public employee* shall not hold 2 or more incompatible offices at the same time." The section prohibits particular individuals from holding two or more incompatible offices at the same time. The Legislature could have simply omitted any reference to public employees if it intended that the prohibition apply only to positions held by public officers. The statute would have provided that "a public officer shall not hold 2 or more incompatible offices at the same time." Under this alternate language, a public employee would not have been prohibited from holding one public office because the employee would not become a "public officer" until elected or appointed to the

13

first office.  The employee would then only hold one public office, not two.  Accordingly, on review of § 2 of the act, we conclude that the Legislature's inclusion of public employees within the prohibition evinces an intent that positions of public employment are "public offices held by a public official."[8]

The exceptions contained in the act, MCL 15.183; MSA 15.1120(123), similarly reveal a legislative intent that positions of public employment fall within the scope of the act.

Exceptions (1), (3) and (4) expressly apply to public officers *or public employees*.  Moreover, the prefatory phrase of those exceptions ("Section 2 does not . . .") signals that the prohibition contained in § 2 generally applies to both public officers and public employees.  If the prohibition did not apply to public employees, no need would exist to include public employees within the exception.

On review of the statute as a whole, we thus conclude

---

[8] The Legislature's inclusion of public employees within the scope of the prohibition comported with the Attorney General's historical approach to common-law incompatibility. In OAG, 1963-1964, No. 4309, p 459 (September 11, 1964), the Attorney General opined that the common-law rule against incompatibility extended to public employment or position. The Attorney General reiterated that conclusion in OAG, 1967-1968, No. 4620, p 278, 279 (August 7, 1968), stating that "[t]he rule of incompatibility has been extended to public employment where the duties of the public employment and the public office are incompatible so that they may not be simultaneously exercised by the same person."

14

that the phrase "public offices held by a public official" encompasses positions of public employment. Although the Legislature could have evinced its intent in clearer terms, we join the Attorney General[9] and the Court of Appeals[10] in adopting this reasonable construction of the statutory language because it best furthers the Legislature's intent, as reflected in the other provisions of the act.[11] We therefore conclude that defendant's positions as delinquent property tax coordinator and township trustee both are "public offices held by a public official" for purposes of the incompatible offices act. We thus turn to the question whether defendant's

---

[9] OAG, 1979-1980, No 5626, p 537, 541, (January 16, 1980).

[10] *Wayne Co Prosecutor v Kinney,* 184 Mich App 681, 683; 458 NW2d 674 (1990).

[11] Our construction of the statutory language is also consistent with the words chosen by the Legislature in amending the act. The Legislature has amended the incompatible offices act three times. 1984 PA 72; 1992 PA 10; 1994 PA 317. The 1984 amendment added an exception that allows public officers and employees of a city, school district, community college district or county to serve as a member of the board of tax increment finance authority. The 1992 amendment extended that exception to membership on downtown development authorities and local development finance authorities. The 1992 amendment also added an exception for public officers and public employees of local units of government having populations less than 25,000. The 1994 amendment made stylistic changes and extended the exception for development and finance authorities to employees and officers of villages and townships. As with the exceptions contained in the original act, these exceptions use language that suggests that public employment constitutes a public office for purposes of the prohibition on holding incompatible offices.

performance of the duties of one of the offices resulted in one of the three situations set forth in MCL 151.181(b); MSA 15.1120(121)(b).

### C.  Breach of Duty of Public Office

The statute defines "incompatible offices" as "public offices held by a public official which, when the official is performing the duties of any of the public offices held by the official, results in" the subordination of one public office to another, the supervision of one public office by another, or "[a] breach of duty of public office." MCL 151.181(b); MSA 15.1120(121)(b).  The parties agree that this case does not involve the first two prohibited situations.  We therefore limit our review to determining whether defendant's performance of her duties resulted in a breach of duty of public office.  We conclude that defendant's positions are not inherently incompatible because only a potential breach of duty of public office arises from the ability of the township to contract with the county for the collection of its delinquent personal property taxes.

Under the statute, incompatibility exists only when the performance of the duties of one of the public offices "results in" one of the three prohibited situations. By using the phrase "results in," the Legislature clearly restricted application of the statutory bar to situations in which the specified outcomes or consequences of a particular action

16

actually occur.[12]  That a breach of duty *may* occur in the future or that a *potential* conflict exists does not establish incompatible offices.  The official's performance of the duties of one of the offices must actually result in a breach of duty.

The Attorney General recognized this limitation in 1979-1980 OAG No 5626, pp 537-542 (January 16, 1980).  The Attorney General explained:

> [I]n many situations the public official may be able to perform the functions of two public offices without breaching a duty of either office by simply not performing a function which may constitute a breach of duty.

> By way of illustration, under the common law the authority of two public entities to contract with each other would prohibit the same person from serving both in positions of influence in determining whether to approve, amend or implement the contract since the person could not give complete loyalty to one entity without some sacrifice of loyalty to the other.  This would be true even if the two public entities had not contracted with each other in the past or contemplated doing so in the foreseeable future. It was the potential for conflict which was determinative, even though no actual conflict of duties has occurred. . . .

> Where, however, incompatibility arises only when the *performance of the duties* of the two offices *results* in a breach of duty of a public office, there is not incompatibility until the two public entities actually enter into contractual

---

[12] Random House Webster's College Dictionary, p 1148, defines the verb "result" as "1. to arise or proceed as a consequence from actions, circumstances, premises, etc.; be the outcome.  2. to terminate or end in a specified manner or thing: *to result in failure.*"

negotiations with each other. Also, in such cases, the public officer or employee may avoid breaching his or her duty of loyalty by abstaining from participating in the consideration of the contract.

We agree with the Court of Appeals that a breach of duty arises when a public official holding dual offices cannot protect, advance, or promote the interest of both offices simultaneously. Public officers and employees owe a duty of loyalty to the public. 63C Am Jur 2d, Public Officers and Employees, § 247, p 690. "All public officers are agents, and their official powers are fiduciary. They are trusted with public functions of the good of the public; to protect, advance and promote its interests . . . ." *People ex rel Plugger v Twp Bd of Overyssel,* 11 Mich 222, 225 (1863) (opinion of Manning, J.).

The Court of Appeals, however, erroneously held that a breach of duty exists when "an issue arises in which one constituency's interests may conflict with the interests of a separate constituency represented by the official." 233 Mich App 382. In so concluding, the Court failed to recognize that the statute focuses on the manner in which the official actually performs the duties of public office. The Court thus disregarded the statutory language requiring an actual breach of duty.[13]

---

[13] The dissent would "focus" the breach of duty inquiry beyond contract negotiations or contract formation. The
(continued...)

In this case, the circuit court erred in granting summary

_____

[13](...continued)
dissent asserts that contract negotiations and formation are merely examples of situations where conflicts of interest and breaches of duty may occur. The dissent concedes that an actual, not potential, conflict of interest must exist. Slip op at 6. It finds nothing in the statutory language of the act that justifies, much less compels, the contract-or-negotiation limitation on the breach of duty inquiry, and thus the inquiry must transcend that artificial barrier.

The dissent's interpretation of the act is an invitation for political mischief. If the act reaches potential conflicts of interest, the likelihood of political shenanigans escalates. For example, a township board member could compel the removal of another board member who is also an employee of a public university by forcing a vote on a proposal that the board consider entering into a contract with the university for the study of grass diseases around the township hall. The dissent would hold that a mere proposal to consider entering into negotiations for such a contract raises a potential conflict of interest requiring that board member to choose which position to abandon.

On the contrary, the statutory language defining "incompatible offices" as offices that, "when the official *is performing the duties of . . . office . . . results in . . .* (iii) a breach of duty" reflects a legislative intent to eschew the common-law focus on *potential* conflicts in favor of *actual* breaches of duty. This legislative choice encourages civic-minded individuals to engage in public service in as many capacities as they choose, without limiting their involvement through concerns about *potential* conflicts of interest. The Legislature has focused on *actual* breaches, recognizing the value of enabling public employees to serve in public offices when they are off duty. The act is, in effect, a public employees enabling act. Thus, our interpretation is consistent with the plain language of the statute.

The dissent asserts that defendant's vote constitutes a breach of duty *even if* the contract-or-negotiation limitation is valid, characterizing the vote essentially as a contract or negotiation decision. We reject the dissent's characterization of defendant's preliminary vote as a negotiation-or-contract decision.

19

disposition for plaintiff under MCR 2.116(C)(10).[14]  The township and the county unquestionably may contract for the collection of delinquent personal property taxes.  MCL 211.56(3); MSA 7.100(3).  Defendant coordinates the division of the county treasurer's office that handles day-to-day collection matters.  Although defendant potentially could be placed at both ends of a contract between the county and a local unit of government, the record reflects that Harrison Township had no existing contract with the county and was not negotiating a contract with it.

Under these circumstances, no incompatibility exists between defendant's positions until the public entities actually enter into contractual negotiations.  A public official in defendant's position may avoid breaching the duty of loyalty by not participating in the preliminary consideration of a possible agreement with the county.[15]  The

---

[14] In reviewing a motion for summary disposition under MCR 2.116(C)(10), the trial court considers the documentary evidence submitted by the parties in a light most favorable to the party opposing the motion. *Smith v Globe Life Ins Co,* 460 Mich 446, 454; 597 NW2d 28 (1999).  The trial court may grant the motion if the documentary evidence creates no genuine issue of material fact for trial and the moving party is entitled to judgment as a matter of law. *Id.* at 454-455.  We review de novo the trial court's ruling on a motion for summary disposition. *Id.* at 454.

[15] Defendant should have abstained from voting on the motion that the township continue to collect its delinquent personal property taxes.  By voting on the motion, defendant breached a duty of loyalty to Macomb County.  We do not,
(continued...)

circuit court therefore erred in granting summary disposition for plaintiff. In light of the absence of any genuine issue of material fact, the court should have granted summary disposition for defendant under MCR 2.116(I)(2). Accordingly, we remand to the circuit court for entry of an order granting summary disposition for defendant.

### III. Conclusion

We conclude that defendant's positions are not inherently incompatible because only a potential breach of duty of public office arises from the ability of the township to contract with the county for the collection of its delinquent personal property taxes. Under the circumstances of this case,

---

[15](...continued)
however, view this action as necessitating that defendant vacate one of her positions because the township never negotiated with the county and has not entered into an agreement with the county. Under these circumstances, the circuit court had discretion whether to void the defendant's action in voting on the motion. MCL 15.185; MSA 15.1120(125). In light of the passage of time and the absence of any indication in the record that defendant cast the deciding vote, we conclude that the circuit court should not void defendant's action.

The dissent asserts that if the contract-or-negotiation limitation is invalid, the vote manifests an actual conflict of interest and thus a violation of the incompatible offices act (part II). We decline to characterize defendant's vote as a negotiation-or-contract decision. Moreover, although MCL 211.56(3); MSA 7.100 allows a county treasurer to reimburse itself for the costs of collecting the delinquent taxes, and to transfer to the county's general fund any funds exceeding the costs of collection, the record in this case contains no proof the Macomb County Treasurer's best interest was to contract with the township.

21

defendant's holding of dual offices did not violate the incompatible offices act because the governmental entities never entered into contractual negotiations. We therefore reverse the decision of the Court of Appeals and remand to the circuit court for entry of an order granting summary disposition for defendant.

TAYLOR, YOUNG, and MARKMAN, JJ., concurred with CORRIGAN, C.J.

**S T A T E   O F   M I C H I G A N**

**SUPREME COURT**

MACOMB COUNTY PROSECUTING ATTORNEY,

    Plaintiff-Appellee,

v                                                                No. 114444

SHERRI MURPHY,

    Defendant-Appellant.

_____

CAVANAGH, J. (*concurring in part and dissenting in part*).

I agree with the majority that the phrase "public offices held by a public official" encompasses positions of public employment. Also, I agree that the defendant's positions as delinquent property tax coordinator and township trustee both constitute "public offices held by a public official" as defined in the incompatible offices act (IOA), MCL 15.181(b); MSA 15.1120(121)(b). Therefore, I join parts II (A) and II (B) of the majority opinion. However, I disagree with the majority's conclusion that the defendant's holding of dual offices did not violate the IOA. Rather, I agree with the courts below that the defendant's offices were impermissibly

incompatible, and would affirm summary disposition in favor of the plaintiff. Therefore, I respectfully dissent from part II (C) and the result of the majority opinion.

I

Section (2) of the incompatible public offices act prohibits a public officer or public employee from holding two or more incompatible offices simultaneously. MCL 15.182; MSA 15.1120(122). "Incompatible public offices" are defined at MCL 15.181(b); MSA 15.1120(121)(b) as follows:

> "Incompatible offices" mean public offices held by a public official which, when the official is performing the duties of any of the public offices held by the official, results in any of the following with respect to those offices held:
>
> (i) The subordination of one public office to another.
>
> (ii) The supervision of one public office by another.
>
> (iii) A breach of duty of public office.

Only subsection (iii) is presently at issue. Specifically, we are faced with whether a violation of the IOA occurred when the defendant, in her capacity as township trustee, chose to vote in favor of a motion to have the township continue to collect its own taxes.

The majority holds that the defendant did not breach a duty of public office by voting in favor of allowing the township to continue collecting its own taxes because the vote

2

did not result in contractual negotiations or create a contractual relationship between the county and the township. The majority's position springs from 1979-1980 OAG No 5626, 537 (January 16, 1980), in which the Attorney General distinguished the common law from the IOA. According to the Attorney General, the common law prohibited a single person from holding dual positions of influence with public entities that had authority to contract with one another, whereas the IOA finds incompatibility only when the performance of the duties of the offices results in a breach of duty of public office. The primary distinction, the Attorney General opined, is that the common law focused on the offices themselves, while the IOA focuses on the officer's actions. As such, the Attorney General reasoned that incompatibility does not arise until the two public entities actually enter into contractual negotiations with each other. Also, the Attorney General noted that, in such cases, the public officer can avoid breaching the duty of loyalty by abstaining from consideration of the contract.

I cannot agree with the majority that the statutory violation in this case arose merely from the fact that the township and the county had the ability to contract with one another. Further, I disagree with 1979-1980 OAG No 5626, 537 (January 16, 1980), to the extent that it implies that, in

3

cases involving an officer who holds positions with two entities that have the ability to contract with one another, the performance of an officer's duties can only result in a breach at the point at which two entities enter into contract negotiations with each other. Nowhere does the IOA provide that public offices will be incompatible only when a party holding the public offices is placed on the competing ends of a contract or contract negotiations. The focus is instead on whether a duty has been breached.

Public officials are charged with a variety of duties, the breach of which may potentially result in an IOA violation. Though a public official's decision to participate in contract negotiations is one example of a situation where a breach of duty of public office may arise, the statutory language simply does not support the assertion that it is the only example.

Even assuming that subsection (iii) supports a finding of incompatibility only when an officer's performance of his duties bears upon the competing entities' abilities to contract with one another, the majority fails to recognize that a vote to decide whether the township should be allowed to continue collecting its own taxes is a decision against entering a contract to have someone else collect taxes. Though the vote in question did not explicitly mention the

possibility that the township could alternatively enter into a contract allowing Macomb County to collect taxes, the result of the vote was the same as if the question had been "should the township collect its own taxes or should the township contract with Macomb County?"  In either case, the vote foreclosed the possibility that the county would be enabled to collect taxes.

For these reasons, I believe that our focus must extend beyond the question whether a contractual relationship has been entered between the county and the township.  Instead, we should consider whether the contested action, here a vote to decide who is responsible for collecting taxes, amounts to the performance of one duty and the breach of another.[1]

## II

Having decided that our focus should be on the statutory language, we must next determine what constitutes a breach and whether a breach occurred in this case.  The majority adopts the Court of Appeals view that "a breach of duty arises when a public official holding dual offices cannot protect, advance, or promote the interest of both offices simultaneously."  Slip op at 19.  The cited basis for this

---

[1] While the majority believes that my approach invites mischief, I believe that it is an approach required by the legislative language.  Cries of mischief should, therefore, be directed toward the Legislature.

5

premise is that public officers are fiduciaries who owe a duty of loyalty to the public. The majority then concludes that two public offices will not be deemed incompatible simply because one official represents two constituencies, each of which may have interests that conflict with the other's interests. Instead, the majority holds, an actual breach must exist.

I agree with the majority that the question under subsection (iii) of the IOA is not whether a particular officer might potentially face a conflict of interest or breach of duty at some undetermined point in the future. The statutory use of the word "breach" and the phrase "is performing the duties" imply that an officer's performance is relevant to whether an IOA violation has occurred. Similarly, the use of the word "results" implies that a situation actually must have arisen in which the officer has breached one duty through the performance of another. For this reason, the IOA does seem to support the proposition that an actual event must trigger the breach contemplated by subsection (iii). For example, had the township never considered whether it should collect its own taxes, the defendant's duties as tax coordinator would only potentially conflict with her duties as township trustee. However, at the moment the township took up the tax question, the vote that occurred had an effect on the

6

township itself and on the township's relationship (or nonrelationship) with the county. I believe that the majority errs in concluding that no breach existed in this case.

The circuit court recognized a problem that the majority does not. It held:

> In the instant matter, a situation has arisen involving both of defendant's offices which has resulted in a breach of her public duty. The issue of whether to allow Macomb County to collect delinquent property taxes-and related fees, expenses, interest, penalties and other charges-*has been presented* to the Harrison Township Board of Trustees. *Defendant's vote on this issue as a township trustee impacts her interests* as a delinquent personal property tax coordinator for the county. This conflict is unavoidable and defendant can not protect, advance, or promote the interests of both her offices with disinterested skill, zeal and diligence. [Emphasis added.]

The circuit court decision was based on the premise that the defendant's decision to vote on the measure resulted in the breach of her duty to the county.[2] I do not believe that the circuit court committed an error requiring reversal in holding that the defendant's decision to vote in her capacity as trustee affected her duties as delinquent property tax

---

[2] As the circuit court recognized, a township trustee is duty bound to carry out the business of the township as an agent and fiduciary of the township. See *People v Hirschfield*, 271 Mich 20, 25; 260 NW 106 (1935). In the present controversy, the question is whether the defendant's decision to carry out the business of the township by voting on a motion to continue the township's tax collection policy breached a duty she owed either to the township or to the county.

7

coordinator.

Even the majority acknowledges that "by voting on the motion defendant breached a duty of loyalty to Macomb County." Slip op at 21, n 14. The majority further implicitly recognizes the predicament created by the vote when it submits that the defendant "should have abstained from voting on the motion." *Id*. However, the majority summarily dismisses the defendant's breach in a footnote. *Id*.[3]

I cannot join the majority's dismissal of the defendant's breach.[4] Given the statutory language, I fail to see how the breach can be excused. Rather, the defendant's actions constitute a breach under the majority's own test. She could not "protect, advance, or promote the interest of both offices simultaneously" as the majority purports to require. Slip op at 19. Unlike the majority, I believe that the defendant's

---

[3] Contrary to the majority's assertion, I believe that an actual, rather than potential, breach occurred in this case.

[4] Similarly, I cannot agree that the harm can be remedied by declaring that the defendant "should have abstained." In so concluding, the majority implicates a number of questions that are not before this Court. Arguably, the defendant became unable to avoid a breach of duty once the *vote* arose. It is also arguable that a decision to abstain would have, in itself, illustrated the defendant's inability to serve the interests of the township. See, e.g., *Contesti v Attorney General*, 164 Mich App 271; 416 NW2d 410 (1987), quoting OAG 1979-1980, No 5626, 545 (January 16, 1980), for the proposition that abstention may eliminate a conflict of interest, but not incompatibility of offices. In any event, we need not decide the issue because the defendant did actually vote.

8

decision to vote triggered the IOA, and that her offices are incompatible.  Therefore, I would affirm summary disposition in favor of the plaintiffs.

WEAVER and KELLY, JJ., concurred with CAVANAGH, J.

9