Kelly, J.
(dissenting). In 1995, the Michigan Department of Natural Resources (DNR) denied defendant TechniSand permission to mine critical dunes because it was ineligible for a permit under the sand dune mining act[1] (SDMA), MCL 324.63701 et seq. One year later, following Governor Engler’s reorganization of the DNR, the newly created Department of Environmental Quality (DEQ) invited TechniSand to apply again, citing “changes in state government.” TechniSand reapplied and the DEQ granted a permit despite the fact, now undisputed, that TechniSand remained ineligible to mine critical dunes. As a result, critical dunes that would otherwise remain untouched will be impaired and perhaps destroyed.
Through the decision in this case, a court majority of four sanctions the DEQ’s unexplained and illegal about-face on TechniSand’s critical dune mining permit. In the process, it strikes a devastating blow to Michigan’s environmental law.[2] This majority perpetuates the *526 DEQ’s unprincipled decision to permit illegal mining of critical dunes by insulating it from the scrutiny of the Michigan environmental protection act (MEPA). MCL 324.1701 et seq. Its holding that the DEQ’s decision to grant the permit to mine critical dunes is “unrelated to” the destruction of those critical dunes defies reality. It mocks our Legislature’s intent to prevent environmental harm. In addition, it is contrary to this Court’s earlier MEPA decisions.[3]
Critical sand dunes, like those at issue in this case, are specially protected natural resources. The. mining act protects these irreplaceable resources by strictly limiting who is eligible to mine them. MEPA works in tandem with the mining act to, in its own words, supplement “existing administrative and regulatory procedures provided by law.” MCL 324.1706. Issuance of the permit will directly enable destruction of critical dunes that would otherwise remain untouched. Hence, it is inescapable that the DEQ’s decision to issue the permit may be challenged under the environmental protection act.
Moreover, the environmental protection act does not impose a statutory period of limitations on legal actions that assert that a party’s conduct will cause environmental pollution, impairment, or destruction. Therefore, I would hold that plaintiffs challenge is not limited by the statutory period of either the Adminis *527 trative Procedures Act (APA) or the Revised Judicature Act (RJA). MCL 24.201 et seq., MCL 600.101 et seq.
I dissent because the majority’s decision subverts the purposes of the sand dunes mining act and the environmental protection act by incorrectly insulating the DEQ’s permit decision from scrutiny under the environmental protection act. Defendant TechniSand is not eligible for a permit to mine critical dunes sand under the sand dunes mining act. Accordingly, I would affirm the decision of the Court of Appeals.
THE MAJORITY’S RESPONSE TO THE DISSENT
The majority’s “Response to the Dissent”[4] is an abrupt departure from its precedent of declining to amend legislative policy decisions with which it disagrees.[5] Its discussion of the wisdom of the Legislature’s decision to bar sand dune mining by anyone who does not meet limited eligibility criteria is unsuited for a judicial opinion. Moreover, the majority’s comparison of the eligibility problem in the permit to a clerical error and its suggestion that my position would allow endless challenges for such trifles are gross exaggerations. Ante at 522. Granting a permit to mine critical dunes to an ineligible operator is a substantive fault. It is a violation of the law that allows conduct likely to pollute, impair, or destroy a natural resource specially protected by the Legislature. Economic development in this state has not ceased in the past thirty years. It will not now grind to a halt under the oppressive weight of permit challenges if *528 this Court reaffirms its prior holdings that MEPA allows challenges to environmentally destructive permit decisions.
FACTS AND PROCEEDINGS BELOW
Defendant TechniSand purchased real property in 1991 that included both critical and noncritical dune areas. Along with its purchase, it obtained a permit to mine sand in noncritical dune areas on one portion of the property. In 1994, TechniSand applied for an amendment of this permit to expand sand dune mining to critical dune areas on an adjacent portion of the property.
The Michigan Department of Natural Resources, the agency charged with reviewing SDMA permit applications at the time, denied the application on the ground that TechniSand was ineligible for an amended permit. The original permit was to mine in noncritical dune areas and did not include the property’s critical dune areas. Also, TechniSand had purchased the land and mining operation after the deadline to apply for an unassociated permit to mine the critical dune areas. MCL 324.63702(1) (b).
In 1995, Governor John Engler created a new agency, the Michigan Department of Environmental Quality (DEQ). Executive Reorganization Order No. 1995-16 (codified at MCL 324.99903). The DEQ was given responsibility for administering the SDMA and other environmental permitting programs, and the Governor appointed its director. The DEQ then wrote to TechniSand indicating that “changes in state government” and “additional information” from TechniSand would allow the DEQ to review the permit application.[6]
*529 TechniSand resubmitted the environmental impact statement and reclamation plan that it had submitted with its previous application, without providing additional information demonstrating how it was eligible for an amended permit. The DEQ issued the permit later that year. It did not explain how TechniSand met the eligibility criteria in the SDMA. Also, it does not now dispute that TechniSand is ineligible for a permit.
Plaintiff Preserve the Dunes was formed in 1996. In 1998, it sued TechniSand and the DEQ for injunctive relief to stop TechniSand’s mine expansion. Plaintiff alleged that TechniSand was ineligible for an SDMA permit and that its mine expansion violated MEPA.
The trial court ruled that plaintiffs challenge to the permitting decision was time-barred under the Administrative Procedures Act and that the environmental impact of the mining was insufficient to implicate MEPA. The Court of Appeals reversed the ruling. 253 Mich App 263; 655 NW2d 263 (2002). It held that the DEQ’s decision to grant TechniSand’s amended permit could be challenged under MEPA and that TechniSand did not qualify for a permit under § 63702 of the SDMA. The DEQ’s decision to amend TechniSand’s permit, it concluded, violated MEPA.
The Court of Appeals remanded the case to the trial court for entry of summary disposition for plaintiff. Because it had found TechniSand ineligible for a permit to mine the critical dune area, it did not review the trial court’s finding that the mining itself violated MEPA. This Court granted the applications for leave to appeal filed by the DEQ and TechniSand. 468 Mich 869 (2003).
*530 THE SAND DUNE MINING ACT PROTECTS MICHIGAN’S CRITICAL DUNES FROM DESTRUCTION
It is without contest that the Legislature enacted the sand dune mining act to stringently protect Michigan’s sand dune areas from further destruction. They are one of the state’s prized natural resources. The Legislature included in the act special provisions to preserve dune areas it labeled “critical.”
It expressly indicated:
The critical dune areas of this state are a unique, irreplaceable, and fragile resource that provide significant recreational, economic, scientific, geological, scenic, botanical, educational, agricultural, and ecological benefits to the people of this state and the people from other states and countries who visit this resource. [MCL 324.35302(a).]
The Legislature enacted the SDMA out of concern that mining the dunes consumes them and harms the environment. The act is an expression of the state’s “paramount” interest in protecting the dunes. See MCL 324.1701. It defines “Sand dune mining” as the “removal of sand from sand dune areas for commercial or industrial purposes.” MCL 324.63701(1).[7] It requires all persons seeking to mine sand dunes to obtain a sand dune mining permit. MCL 324.63704. Regarding critical dunes, the act states that “the removal of any volume of sand that is not sand dune mining within a critical dune area as defined in part 353 is subject to the critical dune protection provisions of part 353.” MCL 324.63701(1).
*531 The SDMA’s flat prohibition against mining any sand in designated critical sand dune areas is subject only to a narrow exception. That is, authorized mining entities that existed when the SDMA was enacted may continue operation (1) on land in which they had a mining interest before July 5, 1989, or (2) on land adjacent to property in which they had a mining interest before that date. MCL 324.63702(1).[8]
These “grandfathering” exceptions reflect the Legislature’s attempt to balance mining interests that predated the critical dune designation of July 5,1989, with the preservation of the remaining and newly designated critical dunes. New entities would be unable to begin operation. Existing entities would have limited opportunities to mine additional areas. By limiting critical dune mining to those entities with a preexisting interest, existing entities would be allowed to continue operating while ensuring that mining would not last indefinitely.
The Legislature mandated that these narrow exceptions for sand dune mining would be implemented *532 through regulatory permits. MCL 324.63704. The act created a permitting procedure to ensure that future mining would be only by parties with a pre-existing legal interest, and in a manner protective of critical dune areas. It cannot reasonably be suggested that the eligibility criteria that completely prohibit all but an expressly defined few operators from mining critical dunes are not a measure of environmental protection.
Only if eligibility is verified do additional environmental protections come into play. Permit applications by eligible entities are reviewed on a case-by-case basis to ensure that the proposed mining is environmentally acceptable. The applicant must submit an environmental impact statement describing the anticipated environmental damage that will occur from the mining operation. MCL 324.63704(2)(b). The applicant must explain why alternative mining locations were not chosen. MCL 324.63705(h). It must include a reclamation plan for the area to be mined. MCL 324.63704(2)(c), 324.63706.
In reviewing the application, the DEQ must ensure that the proposed mining is unlikely to pollute, impair, or destroy natural resources or the public trust in those resources. MCL 324.63709. Any permit issued must require that the provisions of the applicant’s progressive cell-unit mining and reclamation plan are met. MCL 324.63706(3). If threatened or endangered species are present, the plan must include provisions either to protect them or to' mitigate the effect of mining on them. MCL 324.63706(3) (g).
PLAINTIFFS MAY CHALLENGE THE PERMIT ELIGIBILITY DETERMINATION UNDER THE MICHIGAN ENVIRONMENTAL PROTECTION ACT
The environmental protection act provides that
*533 . . . any person may maintain an action in the circuit court. .. where the alleged violation occurred or is likely to occur for declaratory and equitable relief against any person for the protection of the air, water, and other natural resources and the public trust in these resources from pollution, impairment, or destruction. [MCL 324.1701(1).]
Under this act, a plaintiff makes a prima facie case by showing “that the conduct of defendant is likely to .. . destroy the . . . natural resources or the public trust in these resources.” MCL 324.1703(1).[9] The Legislature expressly provided that MEPA supplements existing regulatory procedures that were provided by law. MCL 324.1706.
The SDMA’s eligibility restrictions protect critical dunes from mining by ineligible operators whose conduct is likely to impair or destroy critical dunes that would otherwise remain untouched. Hence, the environmental protection act is applicable to decisions regarding an SDMA permit applicant’s eligibility. The SDMA specifically incorporates the Legislature’s recognition that critical dunes are “irreplaceable” natural resources. MCL 324.35302(a). It provides that “the removal of any volume of sand . . . within a critical dune area ... is subject to the critical dune protection provisions of part 353.” MCL 324.63701(1). Its provisions strictly limiting eligibility to mine critical dunes are intended to help protect critical dunes from pollution, impairment, or destruction.
Thus, the majority’s suggestion that permit eligibility is unrelated to whether the conduct permitted will *534 harm the environment is untenable. Issuance of a permit to an ineligible operator to engage in any mining of critical dunes will allow “conduct... likely to pollute, impair, or destroy. . . natural resources or the public trust in these resources.” MCL 324.1703(1); see also West Michigan Environmental Action Council v Natural Resources Comm, 405 Mich 741, 751; 275 NW2d 538 (1979) (WMEAC).
MEPA is intended "to prevent conduct that is likely to harm the environment as well as to stop conduct that is presently harming it. In WMEAC, this Court ordered that a permanent injunction be entered prohibiting the drilling of oil and gas wells pursuant to a DNE permit. The “issuance of permits was properly before the circuit court as conduct alleged to be likely to pollute, impair, or destroy” natural resources under MEPA. WMEAC at 751. The drilling would cause “apparently serious and lasting, though unquantifiable, damage” to elk herd population. WMEAC at 760. This Court concluded that the previous MEPA, MCL 691.1203(1), is violated whenever the effects of permit issuance harm the environment to the requisite degree. WMEAC at 751, 760.
Unlike permit eligibility for fossil fuel drilling and other activities that may pollute the environment if done improperly,[10] SDMA permit eligibility is severely restricted. The applicant must demonstrate a preexisting mining interest, and no mining may occur until this requirement has been satisfied. It reflects the Legislature’s premise that the removal of even one bucket of sand from a critical dune by an ineligible operator will inordinately impair the state’s critical dune areas. An *535 action that enables such conduct may be challenged as destruction or impairment under MEPA.
This Court observed in Nemeth[11] that a violation of a permitting procedure can support a prima facie claim under MEPA. A “plaintiffs prima facie case is ‘not restricted to actual environmental degradation but also encompasses probable damage to the environment as well.’ ” Nemeth, supra at 25, quoting Ray v Mason Co Drain Comm’r, 393 Mich 294, 309; 224 NW2d 883 (1975). In the soil erosion and sedimentation control act,[12] the Legislature created a pollution control standard that this Court held could be enforced through MEPA. Nemeth, supra at 35.
The Legislature chose to make the SDMA more protective of the environment than the soil erosion and sedimentation control act. As already explained,[13] the Legislature determined that any mining of critical dunes by ineligible entities is an unacceptable destruction of this natural resource. Hence, the majority’s conclusion that eligibility is unrelated to conduct is premised on an artificial and hypertechnical bifurcation of the permitting process. When concluding that permit eligibility is unrelated to conduct, the majority buries its head in the sand.
Its characterization of the eligibility review as an “initial inquiry”[14] is not based on the language of the statute. The eligibility criteria in MCL 324.63702 are as much a condition to engage in critical sand dune mining as the requirements in §§ 63704 through 63706. The SDMA does not enact a hierarchy or order to be followed by those reviewing a permit application. Unlike this *536 Court’s recent decision in Nemeth, here the majority reads “likely to” out of the statute.
The majority argues that an inquiry into the effect on the environment of the proposed mining “would be pointless unless the DEQ first determined that the applicant was eligible for a permit on the basis of the applicant’s status.” Ante at 515. We could not agree more. It would be pointless for the DEQ to review the effect of the proposed mining if the applicant were ineligible for a permit. If the applicant is not eligible, no mining will occur. Critical dunes will not be destroyed.
The majority attempts to restrict the inquiry into TechniSand’s conduct to consideration of the nature of its relationship to the property at issue. This is misleading.[15] The conduct in question is more than TechniSand’s “relationship to the mining property.” It necessarily encompasses TechniSand’s proposal to remove large quantities of sand from designated critical dunes that would otherwise remain untouched. This is the “actual conduct” that the permit at issue allows and that plaintiff alleges is “likely to pollute, impair, or destroy” critical dunes under MEPA. MCL 324.1703(1). Because the critical dunes could not have been mined by TechniSand at all without the erroneous eligibility determination, plaintiff should be allowed to pursue its MEPA cause of action.
Statutory provisions must be read in the context of the entire act so as to produce a harmonious whole. Macomb Co Prosecutor v Murphy, 464 Mich 149, 159; 627 NW2d 247 (2001). Subsections a and b of § 63702(1) must be read together because of their juxtaposition. *537 Subsection b applies when the permit holder seeks to expand the permit to include adjacent land that contains a critical dune area that it owned before July 5, 1989. In contrast, subsection a applies to the amendment or renewal of a permit that already authorizes mining in a particular area.
The permit issued to TechniSand authorized mining only in the noncritical dune areas. TechniSand had to apply for a permit amendment to add the adjacent critical dune areas to its permit. Therefore, subsection b applies to this case. However, TechniSand did not own the land or the rights to mine the sand before 1989 as required by the statute. Therefore, it could not have obtained the permit amendment and could not have engaged in any critical sand dune mining.
TechniSand’s environmental impact statement[16] acknowledged that mining the critical dunes at issue would “significantly impair the environment and would permanently destroy critical dune.” 253 Mich App 269. Witnesses testified from the statement that the mining will change “the nature of the result in the environment ... for hundreds of years”[17] and a “large percent of the critical dune will be removed.”[18] Plaintiffs expert testified that “The critical dune will be gone.”[19]
Nonetheless, the majority holds that the DEQ’s determination that TechniSand is eligible to mine critical *538 dunes is unrelated to whether TechniSand’s mining activities will pollute, impair, or destroy a natural resource. Thus, it concludes that plaintiff cannot rely on MEPA to challenge the permit that has been issued. The majority’s reasoning undermines the critical dunes protections in the SDMA, the intent of MEPA, and this Court’s earlier MEPA decisions.
Plaintiff is not required to challenge issuance of the permit as an administrative decision under either the Administrative Procedures Act (APA) or the Revised Judicature Act (RJA). The MEPA is “supplementary to existing administrative and regulatory procedures provided by law.” MCL 324.1706. It was intended to create a common law of environmental protection. Ray at 306. It does not require that a plaintiff exhaust administrative remedies. MCL 324.1701(1). Accordingly, the statutory period of limitations of neither the APA nor the RJA apply to plaintiffs MEPA claim.[20] Plaintiffs challenge to TechniSand’s permit under the MEPA is not time-barred.
The DEQ does not dispute that TechniSand is ineligible for a permit. Recognizing plaintiffs claim under the environmental protection act expresses no disrespect for an administrative agency’s decision. The majority abdicates its responsibility by refusing to review this permit eligibility determination under MEPA.[21]
*539 CONCLUSION
The majority’s decision today wrongly insulates Sand Dune Mining Act permit eligibility determinations from judicial review. The decision to issue a sand dune mining permit pursuant to the SDMA inherently includes an environmental component. I would hold that issuance of the permit in this case can be challenged under the Michigan environmental protection act.
The Legislature intended the act to apply to permit determinations. Application of the act to permit determinations is entirely consistent with the Legislature’s intent to stringently preserve Great Lakes sand dunes against degradation and to protect the integrity of that environment. The majority’s reasoning frustrates that intent.
Plaintiffs cause is not barred by the statutory limitations periods of the APA and the RJA. The Court of Appeals correctly remanded the case for entry of an order granting summary disposition for plaintiff. Its decision should be affirmed.
Because the majority ignores both the reality of the permitting process and the Legislature’s intent to protect critical dune areas from destruction, I must dissent.
Cavanagh and Weaver, JJ., concurred with Kelly, J.

 The sand dune mining act is codified as part 637 of the Natural Resources and Environmental Protection Act, MCL 324.101 et seq.

 The majority’s decision to significantly narrow the scope of the applicability of the Michigan environmental protection act (mepa), MCL 324.1701 et seq., in this case is compounded by its recent decision in Nat’l Wildlife Federation & Upper Peninsula Environmental Council v Cleveland Cliffs Iron Co, 471 Mich 608; 684 NW2d 800 (2004). There, the same majority ignores thirty years of precedent and applies judge-created standing tests to MEPA plaintiffs. It makes this ruling despite the fact that *526 the statute explicitly grants standing to “any person” to maintain an action to prevent pollution, impairment, or destruction of our natural resources. MCL 324.1701(1).

 See, e.g., Eyde v Michigan, 393 Mich 453, 454; 225 NW2d 1 (1975), Ray v Mason Co Drain Comm’r, 393 Mich 294, 304-305; 224 NW2d 883 (1975), West Michigan Environmental Action Council v Natural Resources Comm, 405 Mich 741, 751; 275 NW2d 538 (1979) (WMEAC), and Nemeth v Abonmarche Dev, Inc, 457 Mich 16; 576 NW2d 641 (1998).

 Ante at 521-524.

 This Court has scrupulously declined to consider the wisdom of the Legislature’s policy decision. See, e.g., Oakland Co Rd Comm’rs v Michigan Prop & Cas Guaranty Ass’n, 456 Mich 590, 612-613; 575 NW2d 751 (1998).

 Letter dated April 1, 1996, from Douglas Daniels and Kimberly Rice of the DEQ. The letter makes reference to an April 20, 1995, letter by *529 which Roger Whitener of the dnr informed TechniSand that, pursuant to an opinion of the state Attorney General, TechniSand was ineligible to mine critical dunes. The April 1, 1996, letter did not address TechniSand’s ineligibility to mine critical dunes.

 The statute exempts from this definition the removal of “volumes of less than 3,000 tons” of sand if the removal is a “1-time occurrence and the reason the sand is removed is not for the direct use for an industrial or commercial purpose.”

 MCL 324.62702(1) provides in full:
Notwithstanding any other provision of this part, the department shall not issue a sand dune mining permit within a critical dune area as defined in part 353 after July 5, 1989, except under either of the following circumstances:
(a) The operator seeks to renew or amend a sand dune mining permit that was issued prior to July 5,1989, subject to the criteria and standards applicable to a renewal or amendatory application.
(b) The operator holds a sand dune mining permit issued pursuant to section 63704 and is seeking to amend the mining permit to include land that is adjacent to property the operator is permitted to mine, and prior to July 5, 1989 the operator owned the land or owned the rights to mine dune sand in the land for which the operator seeks the amended permit.

 The majority’s reference to MCL 324.1702(2) is misplaced. Ante at 516. Plaintiffs are not challenging the deq’s imposition on TechniSand of the sdma’s pollution control standards. They do not challenge the manner in which permissible activity is undertaken. They challenge whether TechniSand’s conduct is permissible at all.

 See also MCL 324.5505 and 324.3106, requiring permits for activities that may pollute the air and water without imposing stringent eligibility criteria.

 See n 3.

 MCL 324.9101 et seq.

 Supra beginning at 530.

 Ante at 515.

 See, e.g., ante at 517-518 n 5. The majority’s implicit recognition that “[cjountless entities apply for and receive permits for conduct that affects Michigan’s natural resources,” ante at 522, demonstrates the internal inconsistency of its argument.

 The majority criticizes me for citing a document “not in the record.” Ante at 522. However, it was Exhibit 21 at trial, and witnesses read from it. See Trial Tr at 122, 582, 785, and 932. Plaintiffs brief on appeal in the Court of Appeals quoted it at p 6. The record on appeal includes all original papers filed in the courts below. MCR 7.311(A). Plaintiff included an excerpt in the appendix (p 14b) to its brief on oral argument before this Court. See MCR 7.308.

 Trial Tr at 935.

 Id. at 785.

 Id. at 122.

 The mepa itself imposes no statutory period of limitations, but equitable claims under the Natural Resources and Environmental Protection Act, which houses mepa, have been held subject to the six-year statutory period of MCL 600.5813. Attorney General v Harkins, 257 Mich App 564, 571; 669 NW2d 296 (2003).

 The majority cites Oscoda Chapter of PBB Action Comm, Inc v Dep’t of Natural Resources, 403 Mich 215, 233; 268 NW2d 240 (1978), to support its finality argument. But its quotation from the case is taken out of context and is from an opinion that did not garner a majority of votes. The statement addressed the court’s authority to consider feasible and prudent alternatives to proposed conduct, an issue entirely unrelated to the majority’s decision that this permit challenge under mepa is time-barred.